METROPOLITAN LIFE INSURANCE
COMPANY, Plaintiff,

v.

Lani SMITH, Stephen Smith, Joanne
Stevens, James Smith and Laurie
Morelli, Defendants,

No. Civ.A. 99–40026–CBS.

United States District Court,
D. Massachusetts.

Jan. 26, 2001.

David H. Burstein, Burstein Law Office, Springfield, MA, for Lani Smith, defendant.

James F. Martin, Robinson, Donovan, Madden & Barry, Springfield, MA, John E. Garber, Robinson, Donovan, Madden & Barry, PC, Springfield, MA, for Stephen Smith, defendant.

## *MEMORANDUM AND ORDER FOR JUDGMENT*

SWARTWOOD, United States Magistrate Judge.

### *Nature of the Proceeding*

On July 20, 2000, this case was referred to me in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, by consent of the parties, to conduct all further proceedings in this case, including the trial, order for the entry of a final judgment and all post-judgment proceedings. The parties have filed the following summary judgment motions:

1. Defendant Lani Smith's Motion For Summary Judgment (Docket Nos. 13, 14) [1]; and

---

1. The docket in this case indicates that Defendant, Lani Smith, has filed two motions for summary judgment, Docket Nos. 13 & 14. However, Docket No. 14 is in reality a memorandum in support of Lani Smith's motion for summary judgment (Docket No. 13). For this reason, I will treat Docket Nos. 13 & 14 as one motion.

2. Defendants, Stephen Smith, Joanne Stevens, James Smith and Laurie Morelli's Motion For Summary Judgment (Docket No. 15).

### Nature of the Case

This is an interpleader action in which the Plaintiff, Metropolitan Life Insurance Company ("Metropolitan"), has deposited with the Court the proceeds of a life insurance policy on the life of George Smith, Jr. ("George Smith") now deceased. Defendants Steven Smith, Joanne Stevens, James Smith and Laurie Morelli ("Smith Children"), are the adult children of George Smith and Ruth Smith, who were divorced in 1985, and who now claim entitlement to these life insurance proceeds. The Defendant, Lani Smith, was the second wife of George Smith who also claims entitlement to the life insurance proceeds as the named beneficiary of George Smith's Metropolitan life insurance policy at the time of his death.

### Facts

The parties have stipulated to the following facts (*See The Defs' Joint Stipulated Statement of Facts in Sup. Of Their Cross–Mot. For Sum.J.* (Docket No. 17) ("*Stipulated Facts*")).

1. By motion dated March 12, 1985, Ruth Smith, by her counsel, moved to enter Judgment of Divorce Nisi Nunc Pro Tunc as of October 4, 1984. The motion was assented to by George Smith's counsel. Both parties, by their respective attorneys, waived any claim of appeal.

2. By Stipulation and Agreement dated March 28, 1985 ("Stipulation and Agreement"), Ruth Smith and George Smith agreed that George Smith would pay Ruth Smith alimony payments of $85 per week.

3. The Judgment of Divorce Nisi, by its terms, became effective April 5, 1985 ("Judgment").

4. The Judgment provided, among other things, that George Smith make Ruth Smith his sole and exclusive beneficiary with regard to his pension plan, and pro-hibited George Smith from changing the beneficiary designation.

5. The Judgement also required that George Smith maintain all life insurance then in effect for the benefit of Ruth Smith, and that he name Ruth Smith as beneficiary. However, as to George Smith's Metropolitan Life Insurance Company Life Insurance Policy, policy No. 010204278 ("MetLife Policy"), which was maintained as a benefit of George Smith's employment with Monsanto, George Smith was required to name Ruth Smith as his sole beneficiary only for such time as he continued to be employed by Monsanto. Thereafter, George Smith was required to name his children or their survivors as beneficiaries of the MetLife Policy, and was prohibited from changing that beneficiary designation. Neither party appealed the Judgment, which became final thirty days after the April 5, 1985 effective date.

6. All of the Smith Children were over the age of twenty-three (23) at the time of the divorce and none of the children were still in college or relied on their parents for financial support.

7. On or about April 4, 1985, George Smith executed a Monsanto form entitled "Pension Option Election", in which he noted that he was not married, and selected from the Monsanto Pension Plan the "Level Income To Age 65" option

8. At some point before November 4, 1985, George Smith submitted a copy of the Judgment to Monsanto's law department, with a question about an election of the fifty percent joint and survivor annuity. Lea A. Bailis, of the Monsanto Law Department, responded to Mr. Smith in writing stating that she had reviewed the Judgment and that his new spouse, Lani Smith, would have to consent in writing to the designation of his former spouse as beneficiary of his pension plan for the designation to be effective under the Retirement Equity Act of 1984.

9. On or about November 27, 1985, George Smith executed a Monsanto form

entitled "Pension Option Election", which designated Lani Smith as beneficiary for the "Fifty Percent Joint And Survivor Annuity" of his Monsanto Pension Plan.

10. George Smith retired from Monsanto on or about February 1, 1986.

11. On or about August 21, 1986, following his retirement, George Smith executed a Monsanto form entitled "Special Election Of Pension Pop–Up Option" for his Monsanto Pension Plan, designating Lani Smith as the beneficiary of the "Reversionary Contingent Annuitant" of his pension.

12. By Complaint for Modification dated January 4, 1988, filed with the Massachusetts Trial Court (Probate and Family Court Department), George Smith sought to eliminate his alimony payments entirely, and obtain permission for designating beneficiaries of his MetLife Policy, "so as to minimally ensure availability of burial expense."

13. On May 20, 1989, Ruth Smith filed with that same court a Complaint for Contempt for violation of the Stipulation and Agreement as a result of George Smith's failure to make alimony payments as required.

14. George Smith's Complaint for Modification and Ruth Smith's Complaint for Contempt were consolidated for hearing on July 21, 1989.

15. As part of the proceedings in connection with George Smith's Complaint for Modification, he gave his deposition. He was asked about life insurance at the deposition, and identified two policies he had in his former wife's (Ruth Smith's) name. He also identified a third policy, the MetLife Policy which was in Ruth Smith's name until he retired, and then was put in the name of his children.

16. In her Trial Brief, Ruth Smith argued that George Smith should not be permitted to modify or amend the Judgment so as to change the beneficiaries of the MetLife Policy, citing law from other jurisdictions suggesting that child benefi-ciaries obtain property rights when a distribution becomes part of a decree, and noting the lack of pertinent Massachusetts authority.

17. At the hearing on July 21, 1989, in connection with George Smith's Complaint for Modification, Judge Joseph E. Rogers discussed the portion of the Judgment naming the adult children of George Smith and Ruth Smith as beneficiaries of the MetLife Policy. The following dialogue took place between James Martin, Esquire as counsel for Ruth Smith and Judge Joseph E. Rogers:

Judge Rogers to Atty. Martin: "I'd like you to inform me how any judge in the Commonwealth of Massachusetts has the right to make children beneficiaries of any insurance policies, or beneficiaries of stock, or beneficiaries of anything under Chapter 208, Section 34.... No judge has authority to do that, it's pretty basic case law.... The beneficiaries of the marriage are the husband and wife, not the children."

Attorney Martin then argues that the parties had agreed to name the children as beneficiaries when they stipulated to the Judgment of Divorce. Judge Rogers responds that he has no way of knowing what the parties originally agreed to as no agreement was filed with the Court.

Judge Rogers states that when he read the provision of the Judgment requiring the children to be named beneficiaries, "it stood out like a red flag." Referring to the request to modify the Judgment, he continues, "I have no authority. Judge Sacco had no authority. No judge has that authority. There is no authority. Unless you show me the authority under the law that a judge could do it, it's a nullity."

Attorney Martin then says that if the Court cannot order that the children should remain beneficiaries of that policy, then Ruth Smith should be named the beneficiary of that policy. Judge

Rogers responds by stating, "I'm not going to order that at this time."

18. On July 31, 1989, Judgment of Modification entered, modifying the October 4, 1984 Judgement so as to cancel George Smith's support obligation to Ruth Smith. The Court did not address the issue of the MetLife Policy.

19. Also on July 31, 1989, Judgment for Contempt against George Smith entered, setting the amount of alimony arrearage and a payment schedule.

20. On May 15, 1990, Ruth Smith filed a Complaint for Contempt alleging that George Smith had designated his current wife, Lani Smith, as his sole beneficiary for his pension plan, contrary to the Judgment, and seeking an order prohibiting the defendant from changing the pension beneficiary designation.

21. On June 27, 1990, George Smith answered the Complaint for Contempt, and, on June 29, 1990, filed his Complaint for Modification, claiming that the Retirement Equity Act of 1984, adopting Internal Revenue Code 417, required spousal consent to designate Ruth Smith as beneficiary of George Smith's pension benefit. By the Complaint for Modification, George Smith sought to eliminate the requirement in the Judgment that Ruth Smith be named the sole beneficiary of his pension plan.

22. Following a hearing held on or about January 31, 1991, Interlocutory Judgment of Contempt was entered in favor of Ruth Smith and against George Smith in the amount of $5,000 for failure to pay support. By the same January 31, 1991 Order, that portion of the Judgement requiring George Smith to name Ruth Smith the beneficiary of his pension plan was vacated.

23. Following the death of George Smith, both Lani Smith and the Smith Children made claim against metropolitan for the proceeds of the MetLife Policy. Metropolitan subsequently filed this interpleader action.

24. During George Smith's lifetime, the Judgment was not submitted to Solutia, Inc. f/k/a Monsanto or Metropolitan for approval by either entity as a qualified domestic relation order ("QDRO") under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1144(b)(7), 1056.

*Discussion*

█ The issue in this case is whether the provision in the Judgement ordering George Smith to name his children as the beneficiaries to his MetLife Policy upon his retirement is valid and enforceable. I begin with the proposition enunciated in *Levine v. Levine*, 394 Mass. 749, 477 N.E.2d 402 (1985), that in making a division of marital assets in accordance with Mass.Gen.L. ch. 208, § 34 (alimony or assignment of estate), a judge cannot order a property assignment to adult children. More recently, the Massachusetts Supreme Judicial Court ("SJC") has reiterated that "judges may not assign marital property to third persons, even children of the marriage, without clear and specific statutory authority." *Johnson v. Johnson*, 425 Mass. 693, 682 N.E.2d 865 (1997).

It is uncontroverted that at the time that the Judgement was entered on October 4, 1984, all of the Smith Children were over the age of 23 and that the MetLife Policy was part of the marital property. I find that the judge presiding over the Smith's divorce did not have the authority to order George Smith to make his children the beneficiaries of his MetLife Policy. However, George Smith did not appeal the judge's order to name his children the beneficiaries of his MetLife Policy upon his retirement (and in fact waived his right to do so) and although he later challenged that order in another proceeding, that order has never been vacated. Lani Smith argues that the fact that the judge lacked authority to order George Smith to name the Smith Children as beneficiaries of his MetLife Policy renders the order void. The Smith Children, on the other

hand, argue that assuming the judge did not have the authority to name them the beneficiaries of the MetLife Policy, that order is not void, but was voidable and their father's failure to appeal the order or otherwise have it vacated renders it a final judgment no longer subject to collateral attack. I have found that the judge did not, in fact, have the authority to order George Smith to name his adult children as the beneficiaries of his MetLife Policy. Having made that ruling, I will now address whether the proceeds of the MetLife Policy should be paid to the Smith Children or Lani Smith.

" 'A void judgment is one which, from its inception, was a complete nullity and without legal effect.' " *Harris v. Sannella,* 400 Mass. 392, 395, 509 N.E.2d 916 (1987)(quoting *Lubben v. Selective Serv. Sys.,* 453 F.2d 645, 649 (1st Cir.1972)). The SJC has cautioned that " '[i]n the interest of finality, the concept of void judgments is narrowly construed.' " *Id.* Thus,

> [a] void judgment, that is, 'a total want of jurisdiction, must be distinguished from an error in the exercise of jurisdiction. A court has the power to determine its own jurisdiction, and an error in that determination will not render the judgment void. Only in the rare instance of a clear usurpation of power will a judgment be rendered void'.

*O'Dea v, J.A.L., Inc.,* 30 Mass.App.Ct. 449, 455, 569 N.E.2d 841 (1991) (quoting *Harris,* 400 Mass. at 395, 509 N.E.2d 916); *see also Harris,* 400 Mass. at 395, 509 N.E.2d 916 (" 'an error in interpreting a statutory grant of jurisdiction is not ... equivalent to acting with total want of jurisdiction and does not render the judgment a complete nullity' " (quoting *Hooks v. Hooks,* 771 F.2d 935, 950 6th Cir.1985)). The question before this Court, therefore, is whether the probate judge totally lacked jurisdiction to order George Smith to name his

children the beneficiaries of his MetLife Policy, or was that order simply an error in the exercise of the judge's jurisdiction.

In *Feinberg v. Diamant,* 378 Mass. 131, 389 N.E.2d 998 (1979), the divorcing parents had one child, a minor, who was mentally retarded. At the time of the divorce, the father was ordered to make weekly support payments for the child. Upon the child's reaching the age of majority, a Probate Court judge modified the original support order to provide that the father continue to make weekly payments to co-guardians of the child to cover the child's personal expenses. Some years later, the father sought to further modify the support order. A probate judge then revoked the order of continued child support on the grounds the court had no jurisdiction to issue it. The SJC upheld the award of support to the adult child on the grounds that a parent may have a common law duty to continue to support an incapacitated child past the age of majority. At the same time, the SJC held that the Probate Court did not have jurisdiction under Mass.Gen.L. Ch. 208, § 28 to issue the order of continued support to the adult child regardless of whether the child was incapacitated. In making this holding, the SJC stated that the Probate Court's jurisdiction under Section 28 is limited "only to 'causes cognizable under the general principles of equity jurisprudence arising between husband and wife' ". *Id.,* at 136, 389 N.E.2d 998; *see also Johnson,* 425 Mass. at 694, 682 N.E.2d 865 (judge's power to assign property in divorce proceeding is statutory and does not include power to assign marital property to anyone other than husband or wife); *Kotler v. Spaulding,* 24 Mass.App.Ct. 515, 518, 510 N.E.2d 770 (1987) (judge acting on his or her own initiative under Section 28 to make order for child maintenance or support is limited by strictures of that statute) [2].

---

2. In *Spaulding,* the Massachusetts Court of Appeals held that although the Probate Court does not have authority under Section 28 to order support, etc. for adult children, to the

extent that the parties have entered into an agreement which provides for such support and that agreement has been incorporated into the divorce judgment, the Probate Court

 

 I find that under Massachusetts law, a probate judge does not have jurisdiction to order the assignment of marital property to adult children and that any attempt to do so is a "clear usurpation of power" which renders such order void. Therefore, the provision in the Judgement whereby George Smith was ordered upon his retirement to name his adult children as the beneficiaries of his MetLife Policy is of no force and effect.

The Smith Children·argue that since George Smith raised this issue in prior proceedings in the Probate Court and that court did not vacate the order requiring him to name his children the beneficiaries of his MetLife Policy, principles of res judicata bar Lani Smith from litigating the enforceability of the disputed order in this proceeding. Lani Smith, on the other hand, argues that since neither she nor the Smith Children were parties to the prior proceedings, the Smith Children's res judicata argument is misplaced. Under the doctrine of claim preclusion, parties may be barred from litigating issues previously litigated by persons in privity with them. The prior proceedings involved persons, Ruth Smith and George Smith, in privity to the Defendants in this action. Although this issue was raised and litigated in those proceedings, the judge did not make a finding on this issue in either proceeding. In the first proceeding, the judge indicated to the parties orally at a hearing on the enforceability of the disputed order and other issues that in his view, the order was a nullity. Under these circumstances, I do not find that Lani Smith is barred from litigating the issue of whether the disputed order is enforceable. Furthermore, since I have found that the order is void, I need not address the issue of whether the provision requiring that the Smith Children be named as beneficiaries of George Smith's MetLife Policy is unenforceable because

the Judgement fails to meet the requirements of a QDRO.

For the reasons set forth above, the Smith Children's motion for summary judgment is denied and Lani Smith's motion for summary judgement is allowed.

### Conclusion

1. Defendant Lani Smith's Motion For Summary Judgment (Docket Nos. 13 & 14) is *allowed;* and

2. Defendants, Stephen Smith, Joanne Stevens, James Smith and Laurie Morelli's Motion For Summary Judgment (Docket No. 15) is *denied.*

Judgment shall enter directing that the monies deposited by Metropolitan Life Insurance Company as proceeds of the policy on the life of George Smith (policy number 010204278) together with accumulated interest, if any, be paid to Lani Smith.

can enforce that agreement by means of a contempt proceeding. *Spaulding,* 24 Mass. App.Ct. at 518, 510 N.E.2d 770. The Smith Children have not pointed to, nor do they argue the existence of, any written agreement between George Smith and Ruth Smith which contained the disputed provision and which was incorporated into the Judgement.